MICHAEL D. PROUGH (No. 168741)
mdp@morisonprough.law
DEAN C. BURNICK (No. 146914)
dcb@morisonprough.law
MORISON & PROUGH, LLP
2540 Camino Diablo, Suite 100
Walnut Creek, CA 94597
Telephone: (925) 937-9990
Facsimile: (925) 937-3272

Attorneys for Plaintiff
RLI INSURANCE COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RLI INSURANCE COMPANY, an Illinois corporation,

    Plaintiff,

v.

NET COST ADVISORS, INC. dba InsuranceDragon.com, a California corporation; CRAIG CORNELL, an individual,

    Defendants.

Case No. **'17CV0612 GPC WVG**

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, RLI Insurance Company ("RLI") hereby complains and asserts the following complaint seeking declaratory judgment, pursuant to 28 U.S.C. § 2201:

1. This case involves RLI policyholders, Net Cost Advisors, Inc. ("NCA") and Craig Cornell ("Cornell") (the "Insureds"), who tendered an underlying lawsuit against them to RLI for defense and indemnity, *Willmark Communities, Inc. v. Net Cost Advisors, Inc., et al.,* San Diego County Superior Court No. 37-2016-00042353 (the "*Willmark* Action"), yet have refused to permit RLI to defend the case. RLI retained defense counsel to dispute liability and file an answer on behalf of the Insureds. NCA and Cornell have since fired the RLI-retained defense firm, substituted in their own personal counsel to act as defense counsel over RLI's objection, rejected replacement defense counsel proposed by RLI, and engaged in settlement negotiations

directly with the Willmark plaintiffs (their long-time customers). They have rejected RLI's proffered defense against the *Willmark* Action, notwithstanding the available liability defenses that can properly be asserted on their behalf. By this conduct, NCA and Cornell have deprived RLI of its clear contractual right to control the defense, its contractually conferred "sole right" to select defense counsel, and its right as the defending carrier to conduct any settlement negotiations, all in material breach of the insuring agreement of their policy with RLI, and they have also violated numerous provisions requiring their cooperation and assistance with RLI and forbidding the Insureds from assuming obligations without RLI's prior written consent.

2.   Because of the past and ongoing misconduct of the Insureds in depriving RLI of its fundamental protections under the insurance contract as a defending carrier, RLI hereby sues for declaratory judgment that: (i) pursuant to the terms of the RLI professional liability policy issued to defendant NCA, RLI has the right to control the defense, the sole right to select defense counsel, and the right to conduct settlement negotiations regarding the *Willmark* Action; (ii) NCA and Cornell have materially breached the RLI professional liability policy by, *inter alia*, discharging defense counsel retained by RLI to defend them in the *Willmark* Action, substituting in their own, unauthorized defense counsel, rejecting RLI's proposed replacement defense counsel, and undertaking to negotiate one or more agreements with the *Willmark* plaintiffs—all to the detriment of RLI and in violation of the Insureds' express contractual and legal obligations; and (iii) by virtue of the Insureds' material breaches of contract, failure to satisfy conditions for coverage, and interference with RLI's right to defend and to control settlement of the *Willmark* action, RLI is excused from any further performance under the parties' insurance contract, including but not limited to any further duty to defend NCA and/or Cornell or to indemnify either or both of them for liability arising from the *Willmark* Action. As a result, whatever judgment or settlement follows in the *Willmark* Action cannot be covered under the RLI insurance contract.

## THE PARTIES

3.   Plaintiff RLI Insurance Company ("RLI") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Peoria, Illinois.

4.   Defendant Net Cost Advisors, Inc. dba InsuranceDragon.com ("NCA") is a

corporation organized and existing under the laws of the State of California, with its principal place of business in San Diego County, California. RLI is informed and believes, and on that basis alleges, that NCA's business includes insurance review and consulting, including market research, broker selection and management, coverage review, specification preparation, claims management analysis, and service reviews of vendors.

5. Defendant Craig Cornell ("Cornell") is an individual residing in, and a citizen of, the State of California. RLI is informed and believes, and on that basis alleges, that defendant Cornell is the President, Chief Executive Officer and sole Director of defendant NCA. RLI is informed and believes and thereon alleges that Cornell was licensed as an insurance broker by the State of California.

## JURISDICTION

6. This complaint seeks declaratory judgment under 28 U.S.C. §2201. There exists complete diversity of citizenship between plaintiff RLI, on the one hand, and defendants NCA and Cornell on the other hand, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. The policy limit of the parties' insurance contract at issue in this case is $2 million. RLI promptly undertook to defend NCA and Cornell against the *Willmark* Action, which is still in its early stages, and is informed and believes the total defense costs for that action will exceed $75,000. The declaratory judgment sought in this action also bears upon indemnity obligations under the parties' insurance contract. Willmark has alleged that NCA and Cornell breached duties of care to Willmark resulting in over $2 million of damages to Willmark, potential liability for which Willmark and the Insureds have demanded coverage from RLI under its policy.

## VENUE

8. Venue in this District is proper within the meaning of 28 U.S.C. §1391. This District is also the most appropriate and convenient venue, as it is where defendants NCA and Cornell reside, where the underlying *Willmark* Action is pending, and where a substantial part of the acts or omissions giving rise to the claims for insurance coverage for the pending *Willmark* Action allegedly took place.

## THE RLI POLICY

9.  RLI and NCA entered into Miscellaneous Professional Liability Policy No. EPG0015503, effective May 20, 2015 to May 20, 2016 ("Policy" or "RLI Policy"), naming Net Cost Advisors, Inc. and Dragon Services, Inc., dba InsuranceDragon.com as insureds. Cornell also is an insured under the Policy. The RLI Policy has a $2 million limit of liability for "Each Claim, including Claim Expenses" subject to a $2 million aggregate limit, with a $10,000 deductible per claim. The RLI Policy is written on a claims made and reported basis with the limit of liability available to pay judgment or settlements being reduced by amounts incurred for "Claim Expenses", defined to include "fees charged by any lawyer designated by [RLI]."

10. Section I. - INSURING AGREEMENTS of the RLI Policy provides, in part:

> In consideration of the payment of premium, and subject to the exclusions and other terms of the policy, the Company agrees as follows with the INSURED:
>
> A. COVERAGE:
>
> To pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as DAMAGES resulting from any CLAIM or CLAIMS first made against the INSURED and reported in writing to the Company as soon as practicable during the POLICY PERIOD
>
> 1.  by reason of any WRONGFUL ACT committed by the INSURED . . .
>
> * * *
>
> B. DEFENSE AND SETTLEMENT:
>
> With respect to such insurance as is afforded by this policy, subject to the Limits of Liability, the Company shall pay in excess of the Deductible:
>
> 1.  CLAIM EXPENSES incurred in the defense of any CLAIM or suit against the INSURED seeking DAMAGES to which this insurance applies even if such CLAIM or suit is groundless, false or fraudulent;
>
> * * * *
>
> <u>The Company, in the INSURED'S name and behalf, shall have the right and duty to investigate, defend and conduct settlement negotiations in any CLAIM or suit alleging a covered WRONGFUL ACT.</u>
>
> * * * *

> The INSURED shall not admit liability for, or make any voluntary settlement, or incur any costs or expenses in connection with any CLAIM involving payment by the Company except with the written consent of the Company.
>
> * * * *
>
> (Underline Emphasis Added)

11. The insurance contract's Section II – Definitions contains the following defined terms, among others:

> C. CLAIM EXPENSES means:
>
> 1. Fees charged by any lawyer designated by the Company after consulting with the INSURED. <u>However, the Company retains the sole right to select the lawyer(s)</u>.
>
> * * * *
>
> (Underline Emphasis Added)
>
> D. DAMAGES, means any monetary damages for which an INSURED is held legally liable . . . .
>
> * * * *
>
> K. WRONGFUL ACT means any alleged act, error or omission, misstatement, misleading statement, neglect or breach of duty committed solely in the performance of PROFESSIONAL SERVICES.

12. Section V.E. of the RLI Policy, entitled INSURED'S DUTIES IN THE EVENT OF A CLAIM, states in part:

> The INSURED shall, as a condition precedent to its rights to the protection of this policy:
>
> * * * *
>
> 2. Not admit any liability, make any payment, assume any obligation, or incur any expense related to such CLAIM, except with the prior written notice of the Company
>
> * * * *
>
> 4. … The INSURED shall … cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution, or

apportionment which the INSURED may have.

> 5. Not demand or agree to arbitration of any CLAIM made against the INSURED without the written consent of the Company and such consent shall not be unreasonably withheld.

13. Section V.I of the insurance contract, entitled ACTION AGAINST COMPANY, states in part:

> No action shall lie against the Company unless the INSURED shall have fully complied with all the terms of this policy; nor until the amount of the INSURED'S obligation to pay has been fully determined. Such determination shall be either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Company.

\* \* \* \*

## THE UNDERLYING LITIGATION

14. RLI is informed and believes, and on that basis alleges, that Willmark Communities, Inc., is a property management company that manages more than 3000 apartment units owned by certain other entities for which Schmidt Trust is the sole shareholder. Mark S. Schmidt is the President, CEO and Chairman of the Board of Directors of Willmark Communities, Inc. For at least the past several years, RLI is informed and believes and thereon alleges, NCA and Cornell have been insurance professionals with some business connection and/or relationship with Willmark Communities, Inc., and/or Schmidt (collectively, with all related companies, "Willmark"). RLI does not insure Willmark.

15. On or about May 26, 2015, certain former apartment tenants of Willmark filed a Complaint Seeking Declaratory Relief, Damages, Injunctive Relief and Restitution, entitled *Parker et al., v. Mark Steven Schmidt, et al.*, San Diego Superior Court Case No. 37-2015-00017514-CU-FR-CTL, claiming generally that Willmark refused to return the former tenants' security deposits following move-out, as required under their lease contracts and California law. The complaint was brought as a putative class action and asserted five causes of action for unlawful retention of security deposits in violation of California Civil Code §1950.5, bad faith retention of security deposits in violation of California Civil Code §1950.5, elder abuse in

violation of California Civil Code §3345, unfair competition in violation of California Business and Professions Code §17200, *et seq.*, and fraud, and asserted putative class action status. The original complaint named Willmark Communities University Village, Inc., and Willmark Communities UTC Finance 1, Inc., as defendants.

16. On or about April 16, 2016, the tenant plaintiffs suing Wilmark filed their First Amended Complaint Seeking Declaratory Relief, Damages, Injunctive Relief and Restitution, now captioned *Miller v. Mark Steven Schmidt, et al.*, which re-asserted plaintiffs' original five causes of action, added a sixth cause of action for false advertising, and again claimed putative class action status. The *Miller v. Schmidt* First Amended Complaint added Willmark Communities, Inc., as a defendant. RLI is informed and believes, and on that basis alleges, that on or about June 8, 2015, Willmark Communities, Inc., and Schmidt were served with the First Amended Complaint in the *Miller v. Schmidt* action.

17. On or about July 1, 2016, the *Miller v. Schmidt* plaintiffs filed their Second Amended Complaint Seeking Declaratory Relief, Damages, Injunctive Relief and Restitution, reasserting their six causes of action and putative class action claims. RLI is informed and believes, and on that basis alleges, that Willmark tendered its defense of the *Miller v. Schmidt* action to its commercial general liability insurance carriers, two of whom have agreed to defend Willmark and Schmidt in that case under reservation of rights because of certain allegations in that action concerning potential defamation claims.

18. The *Miller v. Schmidt* action remains pending. RLI is informed and believes, and on that basis alleges, that no class has been certified, no class certification motion has been brought, discovery is ongoing and the pleadings are still being settled. Willmark is being defended in that action and its ultimate liability, the legal bases and amounts of that liability, have not been adjudicated.

19. On or about December 2, 2016, Willmark Communities, Inc., and Mark Schmidt, individually and as trustee of the Mark S. Schmidt Trust UDT 2/5/92 filed a separate lawsuit, the *Willmark* Action, against NCA and Cornell. Willmark's primary contention in this later case is that it does not have insurance coverage for some or all of the claims asserted against it in the

earlier, pending *Miller v. Schmidt* litigation, because of some acts or omissions of the Insureds in the course of the services or advice they provided to Wilmark. The *Willmark* Action complaint asserts alleged causes of action for breach of contract, breach of fiduciary duty, professional negligence and negligence.

20. RLI received a copy of the complaint in the *Wilmark* Action from a lawyer representing Willmark, on or about December 7, 2016.

21. On January 4, 2017, RLI wrote to the Insureds and agreed to provide for their defense in the *Willmark* Action under a reservation of rights. RLI retained Brian Stewart of Collins, Collins, Muir & Stewart to serve as defense counsel for the Insureds and requested that they fully cooperate with Mr. Stewart in the defense.

22. On January 20, 2017, attorney Stewart appeared in the *Willmark* Action and filed an answer on behalf of NCA and Cornell, disputing liability and asserting several defenses.

23. On January 20, 2017, attorney Robert Shoecraft, acting as personal counsel for NCA and Cornell, wrote to RLI regarding the *Willmark* Action and the underlying *Miller v. Schmidt* litigation, demanding coverage for Willmark's alleged claims.

24. On January 30, 2017, RLI responded to the Insureds' correspondence, confirming once against that RLI was defending them against the *Wilmark* Action while reserving rights.

25. By email dated January 30, 2017, Mr. Shoecraft responded to RLI's January 30 letter on behalf of the Insureds, asserting that RLI's reservation of rights gave rise to the Insureds' right to "independent counsel" to defend them under California Civil Code section 2860. That letter also outlined Mr. Shoecraft's qualifications and experience and requested RLI's agreement to permit him to serve as NCA's and Cornell's independent defense counsel in the case.

26. By letter dated February 10, 2017, RLI responded that no right to independent defense counsel had arisen in the *Willmark* Action by virtue of RLI's reservation of rights and confirming that RLI would continue to defend the Insureds using Mr. Stewart and his firm as defense counsel.

27. Although the *Willmark* Action has recently commenced, a mediation had already been scheduled in the distinct, older *Miller v. Schmidt* lawsuit, so to occur on March 14, 2017.

1  Mr. Shoecraft, acting as personal counsel to the Insureds, gave Mr. Stewart directions contrary to
2  those of RLI regarding Willmark's request for NCA's voluntary participation in the mediation of
3  that *Miller v. Schmidt* lawsuit.  On the basis of the disagreement they had generated, the Insureds
4  then terminated Mr. Stewart as their lawyer for following the instructions of RLI's defense and
5  settlement strategy rather than the Insureds' contradictory directives.

6      28.    RLI is informed and believes that the *Miller v. Schmidt* mediation proceeded on
7  March 14, 2017.  Mr. Shoecraft advised RLI that he and Mr. Cornell attended that mediation, that
8  no settlement of the *Miller v. Schmidt* case was reached by the parties to that lawsuit, but that Mr.
9  Cornell in his individual capacity and on behalf of NCA did negotiate a separate deal with
10 Willmark regarding the *Willmark* Action, without RLI's advice or consent.

11     29.    Also on March 14, 2017, NCA and Cornell wrote a letter formally terminating Mr.
12 Stewart and his law firm from further representing them in the defense of the *Willmark* Action.
13 NCA and Cornell enclosed a Substitution of Attorney form already signed by Cornella and by
14 Mr. Shoecraft.  Mr. Stewart executed and returned the form to Mr. Shoecraft on March 16, 2017.

15     30.    By letter dated March 16, 2017, RLI wrote to the Insureds regarding the terms of
16 the RLI Policy governing control of the defense, selection of counsel, and conduct of settlement
17 negotiations, as well as the cooperation and assistance provisions and prohibitions against
18 voluntary payments or obligations undertaken with RLI's consent.  RLI requested that NCA and
19 Cornell fully comply with its contractual commitments.  RLI also reaffirmed its commitment to
20 fully and vigorously defend NCA and Cornell in the *Willmark* Action and instructed NCA not to
21 file the Substitution of Counsel inserting their personal counsel as defense counsel for the case.

22     31.    By letter dated March 16, 2017, the Insureds rejected RLI's direction and advised
23 that they would file the substitution of counsel.  In fact they had done so that day.  The Insureds
24 also referenced certain terms of a deal they had negotiated with counsel for Willmark with regard
25 to the *Willmark* Action, without RLI's involvement or consent.

26     32.    By letter dated March 17, 2017, RLI wrote to the Insureds to again request that
27 they comply with the insurance contract and permit RLI to defend them against the *Wilmark*
28 Action and to conduct any settlement negotiations.  Due to Mr. Stewart's withdrawal, RLI

proposed replacement defense counsel to appear and defend the *Willmark* lawsuit. On March 22, 2017, NCA and Mr. Cornell rejected the appointment of the replacement defense counsel proposed by RLI and declared their intention to continue their present course of action with regard to the defense of the *Willmark* Action.

### FIRST CLAIM FOR RELIEF
(Declaratory Judgment re Control of Defense, Selection of Counsel and Settlement)

33. RLI reiterates and incorporates Paragraphs 1-32, above, as though fully set forth herein.

34. Under the plain terms of the parties' insurance contract and California law, RLI as a defending insurer has the right to control the defense, the selection of defense counsel and the conduct of settlement negotiations for the *Willmark* Action. The "Defense and Settlement" section of the "Insuring Agreement" explicitly provides that RLI, "in the INSURED'S name and behalf, shall have the right and duty to investigate, defend and conduct settlement negotiations in any CLAIM or suit alleging a covered WRONGFUL ACT." Regarding defense counsel, the contract provides, RLI "retains the sole right to select the lawyer(s)."

35. The Insureds are contractually obligated to cooperate with RLI in the defense, attend hearings depositions and trials, assist in the conduct of suits, and to refrain from admitting any liability, making any payment, assuming any obligation or incurring any expense related to a CLAIM "except with the prior written consent of the Company."

36. Notwithstanding those contract provisions, NCA and Mr. Cornell have (a) interfered with RLI's right to control the defense and conduct settlement negotiations regarding the *Willmark* Action, (b) terminated Mr. Stewart as their defense counsel and substituted in Mr. Shoecraft in his place, (c) rejected the appointment of replacement defense counsel proposed by RLI; and (d) advised RLI that the Insureds negotiated a separate deal with Willmark without RLI's participation or consent. RLI has objected and advised the Insureds at every step of the process that it continued to assert its right to control the defense, the selection of counsel, and to conduct any settlement negotiations, but the Insureds have refused to alter their course of conduct

or to permit RLI to exercise its contractual and legal rights.

37. By virtue of the foregoing, there exists an actual and justiciable controversy between the parties regarding their rights and obligations under the insurance contract. RLI contends that it has the right to control the defense, the selection of counsel and to conduct the settlement negotiations regarding the *Willmark* Action. NCA and Cornell dispute that contention and have assigned their own defense counsel and negotiated their own deal with Willmark.

38. The remedy of a declaratory judgment is appropriate to settle the parties' dispute and provide judicial guidance regarding the parties' respective rights and obligations under their insurance contract.

39. RLI requests and is entitled to a declaratory judgment that it has the right to control the defense of the *Wilmark* Action, the sole right to select defense counsel to defend the *Wilmark* Action on the Insureds' behalf, and the right to conduct settlement negotiations regarding the *Wilmark* Action. RLI further requests and is entitled to a declaratory judgment of the Insureds' obligations to cooperate with RLI and assist in the defense of the *Wilmark* Action.

40. RLI further requests such other and further relief as may be warranted, under 28 U.S.C. §§ 2201 or 2202, in light of the facts to be learned in the course of this action, including any additional facts indicative of collusion, fraud or other misconduct directed at RLI that may be uncovered in the course of investigation and discovery.

### SECOND CLAIM FOR RELIEF
(Declaratory Judgment Regarding Material Breach of Contract)

41. RLI reiterates and incorporates Paragraphs 1-40, above, as though fully set forth herein.

42. NCA and Cornell have materially breached the terms and conditions of the RLI Policy by, among other things, unilaterally discharging attorney Stewart and his law firm retained by RLI under the RLI Policy to defend NCA and Cornell in the *Willmark* action, interfering with RLI's right to select defense counsel and to control the defense of the *Willmark* action, by rejecting replacement defense counsel proposed by RLI, and by refusing to cooperate with RLI

in connection with the defense of the case. NCA and Cornell also have materially breached the insurance contract with RLI by agreeing to participate in one or more mediations in and/or settlement negotiations regarding the *Miller v. Schmidt* action, over objection from RLI, thus interfering with RLI's exclusive right to "conduct settlement negotiations," and by reportedly negotiating their own side deal with Willmark regarding the *Willmark* Action.

43. A contracting party's material breach of contract excuses the non-breaching party's further performance under that contract.

44. RLI is informed and believes and thereon alleges that the Insureds dispute that their conduct constitutes the material breach of their insurance contract with RLI, or that RLI's further performance under the insurance contract has been excused.

45. By virtue of the foregoing, there exists an actual and justiciable controversy between the parties regarding whether NCA and Cornell are in material breach of their insurance contract with RLI and the consequences of the breach(es).

46. The remedy of a declaratory judgment is appropriate to settle the parties' dispute and provide judicial guidance regarding the parties' respective rights and obligations under their insurance contract and flowing from NCA's and Cornell's conduct.

47. RLI requests and is entitled to a declaratory judgment that NCA and Cornell have breached the insurance contract, they are in material breach, and RLI's performance under the insurance contract has been excused as a consequence. Accordingly, RLI's duty to defend and any duty to indemnify for the *Willmark* Action are excused.

48. RLI further requests such other and further relief as may be warranted, under 28 U.S.C. §§ 2201 or 2202, in light of the facts to be learned in the course of this action, including any additional facts indicative of collusion, fraud or other misconduct directed at RLI that may be uncovered in the course of investigation and discovery.

## PRAYER FOR RELIEF

WHEREFORE, RLI Insurance Company respectfully prays for the entry of declaratory judgment, pursuant to 28 U.S.C. §§ 2201 & 2202, as follows:

1. For a declaratory judgment in favor of plaintiff RLI, and against defendants NCA

Morison & Prough, LLP

and Cornell, holding: (a) that RLI has the right to control the defense of the *Willmark* Action; (b) that RLI has the sole right to select defense counsel to represent the Insureds in the *Willmark* Action; (c) that RLI has the right to conduct settlement negotiations with regard to the *Willmark* Action; and (d) that NCA and Cornell owe duties to cooperate with and assist RLI in the defense and settlement of the *Willmark* Action;

  2. For a declaratory judgment in favor of RLI, and against defendants NCA and Cornell, holding: (a) defendants have breached the insurance contract; (b) they are in material breach; (c) RLI's performance under the insurance contract is therefore excused; (d) RLI has no further duty of defense with regard to the *Willmark* Action as of the date of defendants' first material breach; and (e) RLI owes no duty to indemnify with regard to any judgment or settlement with regard to the claims asserted against the Insureds in the *Willmark* Action;

  3. Under Section 2202, for such other and further relief as may be appropriate in light of the facts and circumstances;

  4. For costs of suit incurred herein; and

  5. For any such other and further relief as the Court may deem just and proper.

Dated: March 27, 2017      MORISON & PROUGH, LLP

By: /s/ Michael D. Prough

Attorneys for Plaintiff
RLI INSURANCE COMPANY